### PETERSON, guardian, *et al. v.* WILLBANKS *et al.*

Under the evidence in the case a verdict in favor of the plaintiffs would not have been authorized, and the court did not err in granting a nonsuit.

          No. 3723. JANUARY 23, 1924.

Equitable petition. Before Judge Hardeman. Toombs superior court. February 28, 1923.

On November 21, 1913, Mrs. Carrie Peterson as guardian for Hugh A. Peterson, a minor, and C. H. Peterson individually filed their equitable petition against Mrs. Ada M. Willbanks, formerly Ada M. Peterson, and against James McNatt and Mrs. Ada Willbanks, as administrators of A. A. Peterson, deceased, and against Georgia Smith and the John Hancock Life Insurance Company, defendants, for cancellation of a certain deed, and for the purpose of tracing trust funds into a certain described tract of land, and to have the title to the land thus impressed with a trust character

decreed to be in the plaintiffs. The claim of title to the land by the guardian of Hugh Peterson and C. H. Peterson is based upon the following item of the will of John A. Peterson Sr.: "Item 4. "It is my will that the following tract of land, to wit, all that tract or parcel of land lying, situate, and being in the County of Montgomery and State of Georgia, bounded north by lands of the estate of Isaac Morris and Isaac McLeod (col.); east by Rocky Creek; south by lands of B. F. Conner; west by lands of Jas. Mc-Natt and B. Conner, said to contain six hundred acres, more or less, known as the McCrimmon place, be sold at public or private sale and the proceeds arising from the said sale be equally divided between my two sons, to wit, Charlie H. Peterson and my youngest son Hugh Alexander Peterson." It is alleged in the petition, that the executors, A. A. and Charles Peterson, sold the land so described to N. T. Way, and executed a deed conveying it to him; that the consideration of the sale was the sum of $6000; that the $6000 was not paid, but was evidenced by two notes and mortgages for $3000 each, the mortgages covering the property sold and being made to secure the purchase-money for the land; that one of the notes, and the mortgage to secure it, was made payable to C. H. Peterson, the other to Mrs. Carrie Peterson, guardian; that the taking of the notes and mortgages from Way was done by A. A. Peterson, and neither Charles H. Peterson nor the guardian of Hugh A. Peterson knew anything relative to how the transaction was carried on and concluded; that while C. H. Peterson signed the deed as one of the administrators, he did not receive therefor any compensation in money; that later C. H. Peterson had his note for the purchase-money sued on to judgment, and judgment was entered thereon in the city court of Mt. Vernon, on July 27, 1907; that fi. fa. was issued from the judgment, and was duly recorded on the proper execution docket of the County of Montgomery; that at the same time A. A. Peterson, as transferee of Mrs. Carrie Peterson, guardian of Hugh A. Peterson, brought suit on the note hereinabove described as payable to said guardian, claiming that the same had been legally transferred to him, and obtained a judgment thereon and had a fi. fa. duly issued and duly recorded; that the judgment and fi. fa. which are dated, respectively, July 27, 1907, and August 2, 1907, in favor of A. A. Peterson as transferee, were for the sum of $1512.44 principal, and

A. A. Peterson had collected from Way the remainder of the $3000, which appears credited on the note as follows: 7/12/1905, $1000; 6/9/1906, 10/4/1906, $200, leaving the balance represented by the fi. fa.; that without petitioners' knowledge or consent, A. A. Peterson made settlement with Way, and Way deeded to A. A. Peterson the 600 acres of land described, the latter settling without right or authority the two fi. fas. hereinabove mentioned, and that the deed from Way to A. A. Peterson is dated September 5, 1907; that all of the above-mentioned transactions were carried out and consummated without petitioners' knowledge or consent, except the taking of the original note and mortgage payable to C. H. Peterson; that the purchase-price of the land which A. A. Peterson paid to Way was evidence of indebtedness due to petitioners, and money of theirs collected, handled and manipulated in fraud and without the knowledge and consent of petitioners or either of them, to carry out a fraudulent scheme by which the title to the property in question was to be derived and the property taken, without consideration, away from petitioners and placed either in A. A. Peterson or some near relative of his; that the next step made by A. A. Peterson was to secure from one Wilson a loan on the property in the sum of $1000, but making and executing as security for the loan a deed to the property, with a consideration of $6000, the deed bearing date November 6, 1907.

"Petitioners would not complete this paragraph without alleging emphatically that said deed was a security deed, and, while expressing a fee-simple title on its face, that there was only one thousand dollars received, and that was by way of loan, and that no title except for the purpose of securing said loan passed from said A. A. Peterson to the said W. L. Wilson; that said Wilson did, on the 12th day of July, 1908, make a fee-simple warranty conveyance of said described land to the wife of A. A. Peterson, Mrs. Ada M. Peterson, for and in consideration of the sum of twelve hundred dollars." A copy of said deed is attached. It is alleged, that the $1200 paid to Wilson was the principal due on the loan, $1000, and the interest thereon; and therefore the title of Mrs. Ada M. Peterson is the same as the title held by Wilson, and is and was a security deed, provided that the $1200 was ever paid by Ada M. Peterson, which petitioners allege was never done, but that the money was furnished by A. A. Peterson to carry out

the fraudulent scheme to deprive petitioners of that part of their father's estate, or the proceeds which they should receive by virtue of the sale. C. H. Peterson alleged, that he did not know anything of the cancellation of the fi. fa. in his favor against Way until after the making of the deeds from Way to Peterson, from Peterson to Wilson, and from Wilson to Mrs. Ada Peterson, and from the last named to the insurance company; that he had never received anything from the fi. fa. nor any benefit thereunder; and the conduct of A. A. Peterson amounted to a fraud upon him; and that Mrs. Carrie Peterson was equally ignorant of the acts and conduct of A. A. Peterson. It is further alleged that Mrs. Willbanks, who had been Mrs. A. A. Peterson, knew of the acts charged against A. A. Peterson, and the deed conveying the land to her was a voluntary conveyance; that in paying off the fi. fas. in favor of Mrs. Carrie Peterson, guardian, and C. H. Peterson against Way, A. A. Peterson had used the funds of the estate.

When the case came on for trial evidence was submitted by the plaintiffs, at the close of which a motion for nonsuit was made by counsel for the defendants, and the court sustained the motion. The exception is to this judgment.

*F. H. Saffold, A. C. Saffold, E. D. Graham,* and *Hugh Peterson,* for plaintiffs.

*J. K. Jordan, William Lewis,* and *Lankford & Rogers,* for defendants.

BECK, P. J. (After stating the foregoing facts.) We are of the opinion that the court did not err in sustaining the motion for a nonsuit in this case. The evidence in the case would not have authorized a judgment in favor of the plaintiffs, under the allegations of the petition considered and the prayers for the relief sought. This was not a petition for an equitable accounting; in no view of the case was C. H. Peterson entitled to have the property impressed with a trust in his favor. Under the provisions of that item of the will which plaintiffs relied upon in the case as affording them a right to recover, the executors were expressly authorized to sell the land at private or public sale. The executors were directed to sell the land at public or private sale and divide the proceeds between the two named devisees, one of whom is suing here individually and the other by his guardian. Conceding that under such a provision the devisees could have elected to take the

land instead of having it sold, nevertheless the sale was not unauthorized and not illegal where no election was made before the sale took place in accordance with the authority given in the will. Not even in the pleadings do the plaintiffs claim that the sale to Way was void for fraud, or that there was fraud and collusion upon the part of A. A. Peterson, the executor, and N. T. Way, the purchaser of the land. Nor is it claimed that that sale was void for fraud. Besides, C. H. Peterson joined in the execution of the deed to Way. He claims, and by his evidence supports the claim, that he did not receive anything from the proceeds of the sale. He received a mortgage and one of the notes for $3000, there being two notes for this amount. It is claimed that A. A. Peterson, the executor, paid off the execution based upon a judgment rendered on this note and had the fi. fa. marked paid in full and canceled the mortgage. If he did this and was unauthorized to cancel the fi. fa., and did not pay to C. H. Peterson the amount due him on the fi. fa., he was liable, and on accounting could have been held liable for the amount due on the fi. fa. or on the note and mortgage.

As to the other note and mortgage, the one payable to Mrs. Peterson as guardian, that was transferred to A. A. Peterson. There is testimony to show that A. A. Peterson wrote the transfer himself and that the signature of Mrs. Carrie Peterson, guardian, to this transfer and assignment of the note was in the handwriting of Peterson himself. Mrs. Peterson, testifying by interrogatories, swore that she knew nothing of the sale of the land to Way; but there is no testimony to show that A. A. Peterson did not pay to her the amount of the fi. fa. based upon the note and mortgage. A. A. Peterson died before this trial took place; but Mrs. Carrie Peterson was in life and testified by interrogatories, and this is her testimony: "I am familiar with and know the land in dispute, commonly called the McCrimmon place. I did not know that the tract of land referred to was sold to N. T. Way. N. T. Way never did deliver to me any note for the purchase of that tract of land. I knew nothing about the sale to N. T. Way, and never received any note from N. T. Way for the sale of the land. As to whether I am acquainted with N. T. Way, I never did see him. I did not know that such a note was sued to judgment, or that judgment was obtained on it in court against N. T. Way. My

son, Hugh Alexander Peterson, was nine years old at the date of the death of my husband, John A. Peterson. I cannot recall the date my husband died. I remember it, but I have forgot exactly what year it was,—it was April the 16th, but I forget the year. After he died, I don't remember whether I was appointed guardian for Hugh Alexander Peterson or not. I do not remember whether I had been acting as guardian or not." No proof is brought to show that the money was not paid to Mrs. Peterson, guardian. It is insisted that the burden of proof to show that A. A. Peterson, the executor, did pay the money to Mrs. Carrie Peterson rested on the former. If this were a petition for an accounting and it had been shown that trust funds went into the hands of the executor, then the burden would be upon him, in order to relieve himself of liability, to show that he had paid the money to the legatee or his guardian. But this is not a suit for an accounting; it is an equitable proceeding to trace trust funds into a particular piece of land, and the burden of showing that the trust funds went into that land is upon the parties asserting it; and that burden they failed to carry. Moreover, this suit was brought after the lapse of more than six years from the time the sale of the property was made. The title had passed through the hands of successive transferees to Mrs. Willbanks, formerly Mrs. A. A. Peterson. The latter had made valuable improvements in the form of houses and fences on the place; and while she was making these improvements, there is evidence to show that C. H. Peterson, one of these plaintiffs, knew of this. Besides, there is another difficulty in the way of impressing a trust character upon the land in question, even if under the facts proved Mrs. Willbanks held title under a purely voluntary deed: When Way conveyed to A. A. Peterson, the former executor, he had title to the property under a sale authorized by the will of John Peterson Sr.; and the consideration for the deed from Way to A. A. Peterson was not merely the cancellation of the fi. fas., but $500 additional. If A. A. Peterson actually used the money belonging to Hugh A. Peterson, the minor, and C. H. Peterson, the other devisee of the land, and did not account to them for it, then he was liable for the money, and the recovery could have been had against him upon a suit brought before the demand was barred. It is not alleged that his estate was insolvent. There was nothing to prevent a recovery

of the money upon a suit brought in time. But we do not think that under the evidence in this case a decree was authorized declaring the title to the land itself to be in Hugh Peterson or C. H. Peterson.

*Judgment affirmed. All the Justices concur, except Russell, C. J., dissenting.*