A03A2530, A03A2531. FOWLER v. COX; and vice versa.

(592 SE2d 510)

ELDRIDGE, Judge.

In this case arising from the probate of the will of decedent Rogers Rhine Turner, appellant/cross-appellee Janice Eloise Fowler and appellee/cross-appellant Franice Evelyn Cox, the decedent's daughters, filed notices of appeal in the Supreme Court of Georgia seeking review of an order revoking letters testamentary, ordering reimbursement to the estate of excessive expenses, including the executrix's fees, and the settling of the estate's accounts. Finding that neither the direct appeal nor the cross-appeal involved the validity or meaning of the will, the Supreme Court transferred both appeals to this Court. *In re Estate of Lott*, 251 Ga. 461 (306 SE2d 920) (1983); *Darnell v. Tate*, 208 Ga. 23 (64 SE2d 582) (1951).

In Case No. A03A2530, Fowler appeals from the complained-of order, arguing the insufficiency of the evidence to support the court-ordered settlement of the estate as distributing 49 percent of the estate to Cox, contrary to decedent's will which provided that 25 percent thereof be distributed to Cox;[1] its finding that she failed to settle and distribute the estate within a reasonable period of time; and its finding that she failed to provide Cox with annual accountings of the estate, detailing its receipts and disbursements.[2] By a final enumeration of error, executrix Fowler contends that the probate court erred in awarding attorney fees and expenses of litigation to Cox under OCGA § 9-15-14 (b).

In Case No. A03A2531, Cox appeals, contending that the probate court erred in ordering the estate to reimburse Fowler for her legal

---

[1] Pertinently, the decedent's will provided:

(a) Seventy-Five Percent (75%) of [my estate] shall be distributed to my daughter, JANICE ELOISE FOWLER, if then living, but if she is not then living, then to her then living descendants, *per stirpes*, and (b) Twenty-Five Percent (25%) of [my estate] shall be distributed to my daughter, FRANICE EVELYN COX, if then living, but if she is not then living, then to her then living descendants, *per stirpes*; provided, however, that any property which would pass under this Item to a person who is then a minor shall not pass outright to such person but instead shall be administered and distributed for such person in accordance with the terms for distributions to minors hereinafter provided. The reason that I have given a greater share of my estate to JANICE ELOISE FOWLER than to FRANICE EVELYN COX is that I have a close relationship with JANICE ELOISE FOWLER, but FRANICE EVELYN COX and I have been estranged since my divorce from her mother. My Executor shall have the sole discretion to select the assets which shall constitute each of the shares to be distributed under this Item, and said decision shall be final and binding on all interested parties.

[2] Fowler challenges the grounds upon which she was removed as executrix under the will in separate enumerations of error. We have consolidated such enumerations of error for disposition on appeal.

expenses, these as incurred upon Fowler's misconduct as executrix. The claims of error are without merit in both appeals, and we affirm.

Rogers Rhine Turner died in Cherokee County on March 25, 1998, survived by his two daughters, Fowler and Cox, and leaving an estate valued at more than $2.5 million. Fowler assisted her father in bookkeeping and other financial matters before his death and, for his convenience, held numerous bank accounts and certificates of deposit with her father as co-owner. Turner held other such accounts and certificates in his name alone which were payable to Fowler upon his death.

Before he died, Turner established an estate plan for the purpose of reducing the estate taxes which would be due upon his death by, on May 28, 1997, executing his will, a limited partnership agreement, and a springing durable power of attorney for use in funding the partnership upon certification by competent medical authority of his mental or physical incapacity. Fowler was named as executrix under the will, as a general partner in the partnership, as managing partner upon Turner's death, and as attorney-in-fact in the springing power of attorney.

Turner's health declined in February 1998, which left him in a hospital or a nursing home until his death. Although she neither sought nor obtained medical certification documenting her father's incapacity, Fowler signed deeds during this time frame as his attorney-in-fact purporting to convey to the partnership Turner's property less his home at 130 Reed Street in Canton and a 5.28-acre parcel located in Dawson County. The property conveyed to the partnership consisted of 98.75 acres in Dawson County, approximately 100 acres along Henson Road in Cherokee County, six acres, more or less, in the vicinity of Ball Ground, and six subdivided lots on Reed Street. Fowler also transferred bank accounts and certificates of deposit to the partnership which she held jointly with Turner, these as in excess of $540,000. Fowler, however, did not transfer such assets as were payable to her on Turner's death, an amount of approximately $125,000.

After Turner's death, Fowler offered Turner's will for probate without providing Cox a copy of the will and the petition to probate as required by law. Letters testamentary were issued to Fowler on April 16, 1998, and in December 1998, she filed the estate tax return, receiving an estate tax closing letter from the Internal Revenue Service in July 1999. However, at the end of the estate's first fiscal year, February 28, 1999, Fowler failed to provide Cox an accounting of the estate, this as required annually by the will.

On August 24, 2001, Cox filed her petition for settlement of estate, averring that Fowler had refused to distribute the assets of her father's estate. Fowler followed by transferring all the real estate

out of the partnership to the estate and, on October 24, 2001, made her first distribution as executrix, dividing the 98.75-acre Dawson County property, transferring 73.75 acres to herself and 25 acres to Cox. Cox filed her petition for revocation of letters testamentary, removal of executrix, appointment of administrator, and return of unearned executrix's fees on December 4, 2001. Upon Fowler's acknowledgment of service, the probate court entered a rule nisi, setting a hearing on the petition requiring Fowler to appear before the court to produce an accounting and settlement of the estate, and to show cause why the relief Cox sought should not be granted. A hearing on such issues was held on March 22, 2002, after which the probate court, among other things, found "no reason for further delay in settlement of this case" and ordered Fowler to pay Cox one-fourth of the estate's cash assets on hand ($89,106.25) instanter; to respond to inquiries of the court concerning her administration of the estate as executrix; to provide the court copies of the 1999, 2000, and 2001 annual accountings of the estate required under Turner's will; and continued the case for further hearing.

The hearing resumed on July 31, 2002. A day earlier, Fowler affected a further settlement and distribution of the estate. To herself she deeded the 5.28-acre Dawson County property, the nearly 100-acre property on Henson Road, and two improved lots and three vacant lots on Reed Street in Canton. To Cox she deeded the six-acre Ball Ground property and two improved lots in Canton. Fowler's cash distributions were $896 to herself and $242,147.98 plus $89,106.25 to Cox, the latter as previously ordered by the court.

On November 25, 2002, the probate court entered the order appealed. Therein, the probate court variously found Fowler in breach of her fiduciary duties as executrix, revoked her letters testamentary, entered a settlement of accounts, and awarded Cox her attorney fees and expenses of litigation under OCGA § 9-15-14 (b). *Held*:

### Case No. A03A2530

Upon appellate review of a bench trial, we will not set aside factual findings made by the trial court unless clearly erroneous. In doing so, we give due deference to

the opportunity of the trial court to judge the credibility of the witnesses. OCGA § 9-11-52 (a). The clearly erroneous test is the same as the any evidence rule. Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them. (Citations and punctuation

omitted.) *Lyon v. State of Ga.*, 230 Ga. App. 264 (495 SE2d 899) (1998).

(Citation and punctuation omitted.) *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693-694 (527 SE2d 293) (1999). And, as here pertinent, we are mindful that

> [i]f a personal representative . . . commits a breach of fiduciary duty . . . , a beneficiary of a testate estate . . . shall have a cause of action: (1) To recover damages; . . . (4) To compel the redress of a breach of fiduciary duty by payment of money or otherwise; (5) To appoint another personal representative . . . ; (6) To remove the personal representative . . . ; and (7) To reduce or deny compensation to the personal representative or temporary administrator.

OCGA § 53-7-54 (a); that

> [u]pon the petition of any person having an interest in the estate or whenever it appears to the probate court that good cause may exist to revoke the letters of a personal representative or impose other sanctions, the court shall cite the personal representative to answer to the charge. Upon investigation, the court may, in [its] discretion: (1) Revoke the personal representative's letters; . . . (3) Require the personal representative to appear and submit to a settlement of accounts following the procedure set forth in Article 6 of this chapter . . . ; or (4) Issue such other order as in the [probate] court's judgment is appropriate under the circumstances of the case.

OCGA § 53-7-55; that a "claim that an executor has breached a fiduciary duty [does] not fall outside the jurisdiction of the probate court simply because the plaintiff sought damages[,]" (footnote omitted) *Heath v. Sims*, 242 Ga. App. 691, 693 (1) (531 SE2d 115) (2000), for "original, exclusive, and general jurisdiction" of "[a]ll . . . matters and things as appertain or relate to [the] estates of deceased persons . . ." resides in the probate court under OCGA § 15-9-30 (a) (10); and that, as to citations for settlement, a probate court may "hear evidence upon any . . . question, and make a final settlement between the personal representative[s] and the heirs or beneficiaries[, enforceable] by a judgment, writ of fieri facias, execution, or attachment for contempt." OCGA § 53-7-63; see also *Brooks v. Brooks*, 184 Ga. 872, 875-876 (193 SE 893) (1937) (Under OCGA §§ 53-7-62 and 53-7-63 it is within the power of the probate court to " 'hear evidence

upon any contested question, and settle finally between the distributees and [the] administrator.' ").

1. Fowler challenges the sufficiency of the evidence in support of the instant court-ordered settlement, arguing, in substantial part, the award of damages as resulting in a net distribution to Cox in excess of 25 percent of the estate's total assets. Fowler further contends that her removal as executrix was error, the probate court's findings that, as the executrix of the estate, she unreasonably delayed the closing of the estate and failed to provide Cox annual accountings of the estate under the will as not supported by evidence. Lastly, Fowler asserts that the probate court erred in awarding attorney fees to Cox, this for no evidence showing Cox's actual attorney fees and the reasonableness thereof.

(a) *Damages as contrary to testamentary intent.*

(i) *98.75-acre Dawson County distribution.* Executrix Fowler contends that the probate court's settlement as to her distribution of the 98.75-acre Dawson County property is not supported by the evidence.

At trial, Marion Wilson, a certified appraiser, assigned a value of $573,125 to the undivided property, $52,500 as to the 25 acres deeded to Cox and $435,625 as to the 73.75 acres which Fowler deeded to herself, these figures calculated on a land value basis of $5,500 per acre. Additionally, Wilson testified that, because Cox did not have access from the road to the majority of the property deeded to her, for the intervening Amicalola Creek and a flood plain, the construction of a roadway and bridge was required with attendant costs for obtaining necessary environmental studies and construction permits. Two ecological consultants estimated that the cost of obtaining the permits necessary to construct a roadway crossing the creek was $26,350. In other testimony, Wilson estimated that the cost of building a roadway and bridge was between $50,000 to $60,000. Cox estimated such costs at between $60,000 to $70,000 based upon inquiries she had made on the subject. On this, the probate court awarded Cox $26,000 for necessary environmental studies and permits and $66,000 to construct a roadway and bridge to the useable portion of her property. The probate court also awarded Cox $90,781, a sum which the court characterized as the amount of Fowler's "under distribution" to Cox for the manner in which she divided the property, this as 25 percent of the appraised value of the "undivided" property[3] less the value of the 25-acre distribution to Cox calculated at $5,500 per acre or $52,500.

It is uncontroverted that Fowler distributed the 98.75-acre Dawson County property as she did. Neither is there any dispute that

---

[3] 25% x $573,125 = $143,281.

having done so, Fowler refused to grant an easement over the road and bridge located on the acreage she conveyed to herself, such an easement as enabling Cox to access the property distributed to her. Fowler argues that the effect of the probate court's money awards to Cox, the under distribution corrective and that to permit access, plus $52,500 as the value of the 25-acre parcel was to give Cox 43 percent of the appraised value of the undivided asset in apparent conflict with Turner's will. However, the record shows that the complained-of money awards did no more than bring the transfer to Cox into parity with what Fowler had transferred to herself. Inasmuch as there was evidence of bad faith in Fowler, the probate court was authorized to award damages to Cox as it did for such purpose. OCGA § 53-7-54 (a) (1), (4). Rather than conflicting with Turner's testamentary intent as to the allocation of his estate between his daughters, 75 percent to Fowler and 25 percent to Cox, this effectuated it.

(ii) *5.28-acre Dawson County distribution.* Fowler contends that the probate court's order distributing the 5.28-acre Dawson County property, this adjoining the above-referenced 98.75-acre undivided tract, was error for want of evidence supporting the value the court attributed to it. The probate court distributed this property to Fowler in the amount of $29,000, valuing it at approximately $5,500 per acre.

By her July 30, 2002 settlement of the estate, Fowler, individually, valued the property at $7,703.95. Pertinently, the evidence shows that Wilson valued the undivided 98.75-acre Dawson County property at $5,500 per acre, this as fairly reflective of the value of such tract had it been sold as a whole having a combination of topographies. While Wilson's testimony did not directly extend to the 5.28-acre outparcel in issue, nothing of record shows that inclusion of such parcel in the undivided tract would have altered the basis upon which he estimated the value of the 98.75-acre land tract as $5,500 per acre upon the combination of topographies. Although circumstantial, this constitutes some expert evidence that the probate court properly assigned a value of $29,000 to the 5.28-acre Dawson County property or approximately $5,500 per acre. In this regard, Fowler's undervaluation of the property was hers alone. That evidence supported the award of compensatory damages as awarded of record, such award was proper. OCGA § 53-7-54 (a) (1), (4).

Further, by her appellate brief, and without reference to the record, Fowler argues that there is "unrefuted evidence the estate only owned an undivided one-half interest in [the 5.28-acre parcel]." We find no evidence of record to this effect. To the contrary, the deed by which Fowler conveyed this property to herself makes no reference to any one-half interest, and Fowler testified at trial that she never made any attempt to determine the nature of the estate's own-

ership of the property, her attorney suggesting only the possibility of the same in that Turner had owned jointly the 5.28-acre parcel with his deceased brother. Thus, Fowler's claim of error in this respect is likewise without merit.

(iii) *Tax-free gifts.* Next, Fowler faults the probate court for finding that she, on behalf of Turner, should have given tax-free gifts from the partnership to Cox and her family members prior to Turner's death, this as a further means of reducing the estate's tax liability. Fowler argues the foregoing finding as contrary to the testimony of Lex Watson, Turner's wills and estates attorney. Finding that Watson testified only that the gifting scheme called for equal gifts versus the 75/25 split required by the will, we disagree. Pertinently, there is evidence of record showing that in a February 16, 1998 conference call, Watson participating, Fowler advised Thomas D. Downs, Turner's certified public accountant, that her father wanted her to make gifts from the partnership to herself, Cox, and their respective families. This constitutes some evidence that Turner intended gifting, independent of his will, as a means of reducing estate taxes. *Sam's Wholesale Club v. Riley*, supra.

Further, while Fowler does not challenge the probate court's award of damages upon her failure to give Cox her 23.093 percent interest in the partnership in the amount of $780,122, she complains that the probate court's failure to reduce Cox's share of the estate by 25 percent of such sum was unsupported by the evidence. However, the evidence is that the gifting scheme was independent of that under the will. Consequently, to have reduced Cox's distributive share of the estate as Fowler urges in these circumstances would have been to deny her compensatory damages to which she was entitled. OCGA § 53-7-54 (a) (1), (4). This the probate court properly declined to do.

(iv) *Partnership funding.* Fowler complains that no evidence supports the probate court's finding that she "cost" the estate $29,015 in additional taxes by failing to transfer funds to the partnership from the certificates of deposit and other bank accounts, whether held jointly with Turner or as payable to her on his death. However, Fowler does not support this conclusory claim with reasoned argument or reference to the record. Accordingly, such contention is deemed abandoned. Court of Appeals Rule 27 (c) (2); *Ellis v. Stanford*, 256 Ga. App. 294, 297 (3) (568 SE2d 157) (2002).

(v) *Appraisals.* Fowler appears to argue that no evidence supported the appraised value which the probate court used in entering its court-ordered settlement for "contradiction" as to the appraisal it employed. There is evidence of record supporting each of the appraisals of value relied on. The Dawson County properties were appraised as described in Division 1 (a) (i) and (ii), supra. Otherwise, there is

evidence supporting the findings of the probate court indicating that Fowler favored herself in her purported July 30, 2002 distribution of the estate, undervaluing the Henson Road and Reed Street properties which she distributed to herself[4] and overvaluing the Ball Ground and Reed Street[5] properties which she distributed to Cox thereby.

(vi) *Other.* Fowler otherwise appears to restate, rather than argue, the findings of the probate court as to this enumeration of error. To the extent that this is the case, there is waiver of any claim on appeal. Court of Appeals Rule 27 (c) (2); *Ellis v. Stanford,* supra.

While the awards of damages by the probate court, in effect, reduced the net estate distributed to Fowler, collectively, they did no more than correct for breaches of fiduciary duty in Fowler under and outside Turner's will. The appraisals employed by the probate court in effecting its settlement of the estate were supported by evidence. Accordingly, the instant claim of error is meritless. OCGA §§ 53-7-54 (a) (1), (4); 53-7-55 (4); *Heath v. Sims,* supra; *Brooks v. Brooks,* supra; *Sam's Wholesale Club v. Riley,* supra.

(b) *Breaches of fiduciary duty.* Fowler complains of her removal as executrix of Turner's estate, contending that there was no evidence supporting the probate court's findings that she unnecessarily delayed the closing of the estate and failed to provide Cox annual accountings as to the financial status of the estate as she did so.

By the order which Fowler appeals, the probate court cited her for 17 breaches of fiduciary duty as executrix. Fowler argues only two as unsupported by the evidence. As to her claim that no evidence shows unreasonable delay in closing the estate, the record shows that Fowler could have closed the estate upon receipt of the estate tax closing letter in July 1999. Instead, the evidence shows that Fowler failed to take any significant action to close the estate until late 2001 when the instant litigation began. At trial, although given a full and fair opportunity to explain her delay in settling the estate, she was unable to do so and could not articulate any plan for winding up the estate. While by her appellate brief, Fowler appears to attribute her delay to an agreement of the parties reached through their attorneys in early December 2000, the evidence is to the contrary, indicating only that the parties "discussed," rather than agreed upon, the actions remaining to wind up the estate. And as to Fowler's failure to

---

[4] Fowler appraised the Henson Road and Reed Street properties she distributed to herself as $1,800,810 and $163,000, respectively. At trial, Wilson valued these properties at $2,100,000 and $202,000.

[5] To Cox, Fowler distributed the Ball Ground and remaining Reed Street properties, appraising these at $175,000 and $150,000, respectively. Wilson appraised these properties at $60,000 and at $82,000.

provide Cox annual statements accounting for the estate under the will, Fowler testified that she had not done so at the end of the estate's fiscal year in February 1999, 2000, 2001, and 2002, although she was aware that her father's will required it. Neither could she recall if she had instructed anyone to provide Cox such a statement on her behalf. Otherwise, the record shows that Fowler for the first time provided such statement to Cox in April 2002 upon the probate court's order to do so entered on December 2001.

The probate court's findings as to breaches of fiduciary duty in Fowler were supported by evidence. No abuse of discretion in the probate court obtained upon its findings that Fowler unreasonably delayed settling the estate and failed in providing Cox annual statements as required by the will. "The discretionary powers of the probate court under OCGA § 53-7-55 are very broad and may be exercised whether the violation of law under consideration is a minor or major matter." (Citations and punctuation omitted.) *In re Estate of Jackson*, 241 Ga. App. 392, 394-395 (2) (526 SE2d 884) (1999). Removal of a personal representative is authorized for the failure to provide annual statements. Id. at 395 (2); *Conkle v. Babb*, 93 Ga. App. 405 (1) (91 SE2d 789) (1956). The failure to make timely and proper returns is a cause for removing an executor within the sound discretion of the probate judge. *In re Estate of Jackson*, supra; *Holsenbeck v. Arnold*, 75 Ga. App. 311, 313 (4) (43 SE2d 348) (1947).

(c) *Attorney fees.* Citing *Murray v. Barrett*, 257 Ga. App. 438 (571 SE2d 448) (2002), Fowler avers that the probate court erred in awarding Cox attorney fees in the absence of a hearing for want of evidence at trial showing her actual attorney fees and the reasonableness of such fees. Fowler does not support this claim of error by citation to the record as required under Court of Appeals Rule 27 (c) (2). Accordingly, this issue is waived on appeal.

*Case No. A03A2531*

2. Curiously, cross-appellant Cox appeals in this case, contending that the probate court erred in ordering the estate to reimburse Fowler for her legal expenses notwithstanding her misconduct as executrix, this by implication upon its failure to

disallow reimbursement to Fowler of fees that she spent on her legal representation[,] [i]nstead [finding] that although "some of the expenses may be excessive and some may be unnecessary, some of the expenditures brought out information which benefit[t]ed the court in this case and it is impractical for the Court to attempt to separate the amounts."

However, nothing of record shows that the probate court ordered the estate to pay Fowler's attorney fees. Rather the record shows the contrary, the probate court awarding Cox her attorney fees under OCGA § 9-15-14 (b) because Fowler failed to fulfill her duties in administering the estate and unnecessarily defended against Cox's action. Further, the record reveals that the probate court neither granted nor denied Cox's request that Fowler's expenses, from Cox's perspective apparently as inclusive of Fowler's attorney fees as executrix, be denied for any impracticality. "Instead, the Court order[ed] reimbursement to [Cox] from the Estate for her expenses" and subsequently did so, ordering Fowler to pay Cox her nonattorney costs of $6,024.76. Evident misunderstanding to the contrary notwithstanding, there thus is no ruling by the probate court on this issue. Consequently, nothing to review on appeal is presented. *Krieger v. Walton County Bd. of Commrs.*, 271 Ga. 791, 794 (3) (524 SE2d 461) (1999); *Ga. Dept. of Natural Resources v. Coweta County*, 261 Ga. 484 (405 SE2d 470) (1991).

*Judgment affirmed in Case Nos. A03A2530 and A03A2531. Johnson, P. J., and Mikell, J., concur.*

DECIDED DECEMBER 19, 2003.

*Donald L. Mize*, for appellant.
*Samuel J. Rusbridge, Donald J. Snell, Floyd E. Propst III*, for appellee.