**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 24, 2014**

# In the Court of Appeals of Georgia

A13A1747. IN RE: ESTATE OF GEORGE EDWARD KNAPP et al.

MᴄMɪʟʟɪᴀɴ, Judge.

Henry Scott Knapp ("Scott Knapp"), the former executor of his mother's will and the nominated, but unappointed, executor of his father's will, appeals from the order of the Probate Court of Bibb County finding that he breached his fiduciary duty, thereby damaging the other heirs to the estates – his sister, niece, and nephew. Scott Knapp is not disputing the finding that he breached his fiduciary duty, instead contending that the remedy awarded by the probate court – that he shall not receive any further distributions from his mother's and father's estates – was without legal basis and exceeded the scope of permissible damages. For the reasons set forth below,

we agree with Scott Knapp that the probate court erred in its judgment, and we vacate its order and remand the case for proceedings not inconsistent with this opinion.

Mary Scott Knapp ("Mary Knapp") died on April 15, 2000, and was survived by her husband George Edward Knapp ("George Knapp"), her children Scott Knapp and Nancy Louise Knapp ("Nancy Knapp"), and by her grandchildren Andrew Knapp and Leanna Knapp (the "Grandchildren"). Mary Knapp's last will and testament, and the codicils thereto, were admitted into probate, and Scott Knapp was appointed executor of her estate.

George Knapp died on October 25, 2005. Scott Knapp later filed George Knapp's will and three codicils thereto with the Probate Court of Bibb County. Thereafter, in 2007, Andrew Knapp filed a petition to probate the will and the first and second codicils, while Scott Knapp filed a petition seeking to probate the third codicil.[1] The Grandchildren and Nancy Knapp filed caveats to Scott Knapp's petition.

Following a trial on the petitions, the probate court found, among other things, that the entire residue of Mary Knapp's estate was bequeathed to George Knapp. Scott Knapp did not, however, timely conclude the affairs of her estate and distribute the residue to George Knapp, and he failed to file income tax returns for the estate

---

[1] The third codicil would have effectively disinherited the Grandchildren.

2

although there had been significant income in the years following Mary Knapp's death. Scott Knapp also failed to timely pay over or deliver certain custodial accounts, which his parents had created for the Grandchildren, as well as certain savings bonds which were titled in the Grandchildren's name.

After making its findings, the probate court (i) admitted George Knapp's will and its first and second codicils to record as proved in solemn form, (ii) denied Scott Knapp's petition to probate the third codicil, (iii) appointed the county administrator, Robert E. Herndon, as administrator of George Knapp's estate, and (iv) ordered Scott Knapp to surrender to Herndon any of the decedents' property in his possession as well as all records of actions and transactions involving the assets of George Knapp following April 15, 2000, the date of death of Mary Knapp. The probate court contemporaneously removed Scott Knapp as executor of Mary Knapp's estate, which it determined had not been completely administered, and appointed Herndon as its administrator.[2] Under the terms of the will and the first and second codicils, Scott

---

[2] Although Scott Knapp asserts without support that Nancy Knapp is now administrator of the estates (which she denies as "obviously incorrect"), he also states that after the hearing on the petitions, the probate court "appointed [Herndon] as a county administrator of [] both estates."

Knapp and Nancy Knapp stood to inherit one-third each of George Knapp's estate, while the Grandchildren's one-third share was to be divided equally between them.

In 2010, the Grandchildren filed motions to assess money damages, attorney fees, CPA fees, additional estate expenses, tax penalties, and interest against Scott Knapp. Nancy Knapp later joined with the Grandchildren in seeking such relief. After an initial motion hearing, the probate court issued an interim order requiring that Scott Knapp deliver to Herndon, by December 1, 2010, all financial records remaining in his possession regarding Mary Knapp's and George Knapp's estates. Scott Knapp was also directed to provide Herndon with an accounting of sums paid to himself, Nancy Knapp, and the Grandchildren regarding their respective distributive shares of George Knapp's estate by December 1, 2010, and to send Herndon a compact disk containing copies of the data files on the estates' accounts by October 1, 2010 .

The probate court set another hearing on the matter for December 9, 2010. Scott Knapp failed to appear at the hearing, and the probate court, upon finding that Scott Kemp had failed to comply with the interim order, held him in civil contempt and imposed a civil penalty of $1,000 per day, beginning December 20, 2010, and continuing thereafter until Scott Knapp purged himself of the contempt.

4

The evidentiary hearing on the Grandchildren's and Nancy Knapp's motions for assessment of damages and other relief was held on January 11, 2012. In its subsequent final order, the probate court concluded that Scott Knapp's failure to turn over the records of the estates of Mary Knapp and George Knapp and to fully account for his dealings with the estates had been, and remained, intentional and without just cause and excuse. It noted that the civil penalty for failing to comply with the court's order to provide an accounting and to deliver all records of the estate would have exceeded $380,000 as of the hearing date.

The probate court also determined, among other things, the amount of previous distributions from George Knapp's estate to Scott Knapp, Nancy Knapp, and the Grandchildren, the amount of cash and investments remaining in the estate, and the probable combined value of the remaining real property. Specifically, it found that Nancy Knapp and the Grandchildren had suffered actual damages in amounts not less than: (i) $42, 887 for income and estate tax interest and penalties, (ii) $15,873.60 in attorney fees and expenses for Nancy Knapp, plus additional fees for the evidentiary hearing, (iii) $28,220.37 in attorney fees and expenses for the Grandchildren, plus additional fees for the hearing, (iv) $5,559.61 for the surety bond cost to replace supposedly missing stock certificates which were ultimately found in Scott Knapp's

possession, and (v) a decline in value of the real property of the estates during the period following George Knapp's death and the probate of the George Knapp's will, which amount was "as yet not determined because two parcels of real property remain unsold."

After the probate court made its findings, it ordered that Scott Knapp receive no further distribution from Mary Knapp's and George Knapp's estates, and it directed that "[t]he remainder of the Estates, after administration is complete, shall be inherited by and distributed 50% to Nancy Louise Knapp and 50% jointly to [the Grandchildren]."[3] Scott Knapp appeals from this order.[4]

For purposes of our review, it is well established that "[t]he court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them." *Page v. Braddy*, 255 Ga. App. 124, 126 (564 SE2d 538) (2002). See OCGA § 9-11-52 (a) (in nonjury trials in courts of record, the court's "[f]indings shall not be set aside unless clearly erroneous, and due regard shall be given to the

---

[3] The probate court also directed Herndon to make certain distributions to Nancy Knapp and the Grandchildren, to liquidate the remaining property in the estates, and to deed the remaining property to Nancy Knapp and the Grandchildren in proportion to their interests if the property was not sold by July 1, 2012.

[4] Nancy Knapp and the Grandchildren have filed separate briefs asking that we affirm the probate court's order.

6

opportunity of the trial court to judge the credibility of the witnesses"). However, we review questions of law de novo. See *Page*, 255 Ga. App. at 126; *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

Scott Knapp contends that the probate court erred when it ordered that he receive no further distributions from his parents' estates as a remedy for his breaches of fiduciary duty.[5] We agree under the peculiar circumstances of this case.

To begin with, we must consider what remedies are permitted when a personal representative of an estate commits a breach of fiduciary duty. OCGA § 53-7-54 provides that "[i]f a personal representative or temporary administrator commits a breach of fiduciary duty or threatens to commit a breach of fiduciary duty," the beneficiaries and heirs have a cause action, among other things, "[t]o recover damages;" "[t]o compel the redress of a breach of fiduciary duty by payment of money or otherwise;" and "[t]o reduce or deny compensation to the personal representative or temporary administrator." OCGA § 53-7-54 (a) (1), (4), (7). The remedies for breach of fiduciary duty enumerated by OCGA § 53-7-54 are not

[5] Scott Knapp also contends that the probate court violated the Separation of Powers clause of the Georgia Constitution when it ordered him to receive no further distributions from his parents' estates. See Ga. Const. of 1983, Art. I, Sec. II, Par. III. The gravamen of that claim, however, is that the probate court sanctioned him without authority to do so, and we reach that issue here.

7

exclusive and "[do] not prevent resort to any other appropriate remedy provided by statute or common law." OCGA § 53-7-54 (c). Relying on these provisions, we have held that a breach of fiduciary duty may expose a personal representative to compensatory and general damages, as well as punitive damages if the standard for such an award is otherwise met. See *In re Estate of Zeigler*, 295 Ga. App. 156, 159-160 (2) (a), (b), (c) (671 SE2d 218) (2008); *Heath v. Sims*, 242 Ga. App. 691, 691(531 SE2d 115) (2000) (finding that "a probate court has jurisdiction over a claim against executors of an estate in which the claimants seek payment of damages for breach of a fiduciary duty").

Thus, it is clear that the probate court has been vested with broad powers to remedy a breach of fiduciary duty by a personal representative. The question raised in this case is whether these broad powers include divesting the personal representative of his inheritance under the terms of the will. Here, the probate court, rather than explicitly entering a judgment for damages, determined that Scott Knapp would not take any further distribution from his parents' estates and ordered that the remainder "should be inherited by" and distributed 50% to Nancy Knapp and 50% to the Grandchildren. Neither Nancy Knapp nor the Grandchildren have identified any remedy for breach of fiduciary duty which contemplates, as a direct consequence, the

8

loss of a bequest from a testator and the inheritance of that interest by the other heirs. Nor does any party suggest that the wills of either Mary Knapp or George Knapp authorize the probate court to divest Scott Knapp of any interest in the estates to which he might be entitled. See generally *Folsom v. Rowell*, 281 Ga. 494, 498 (2) (640 SE2d 5) (2007) (noting that "a testator, by his will, may make any disposition of his property not inconsistent with the laws or contrary to the policy of the state") (citation and punctuation omitted).

Nancy Knapp and the Grandchildren contend that what the probate court did, however, was award damages, which the court had the authority to do, and set off that amount against Scott Knapp's remaining distributive share under his parents' estates. We agree that it appears that this was the intent of the probate court as it found that "all such damages incurred by Movants and Nancy Knapp are the direct and proximate result of breaches of fiduciary duty and intentional acts of Scott Knapp." And the probate court concluded that those damages "should be chargeable against any inheritance by him from the Estates of Mary Scott Knapp and George Edward Knapp."[6]

---

[6] It appears from the record that this remedy was requested by counsel for the Grandchildren and Nancy Knapp in order to finally conclude the litigation, even if it meant that they would not be able to fully recover for the breach of fiduciary duty.

9

We are persuaded that the probate court's authorization "[t]o compel the redress of a breach of fiduciary duty by payment of money *or otherwise*," OCGA § 53-7-54 (a) (4), and the provision allowing "resort to any other appropriate remedy provided by statute or common law," OCGA § 53-7-54 (c), give it broad authority to set off a money judgment against a personal representative's share of the estate. (Emphasis supplied.) See *Fowler v. Cox*, 264 Ga. App. 880, 887 (1) (a) (vi) (592 SE2d 510) (2003) (allowing damage award to reduce the net estate to executrix because "they did no more than correct for breaches of fiduciary duty"). This authority is consistent with OCGA § 13-7-9, which provides that "[a] legatee or owner of a distributive share in an estate may set off such share against a judgment against him unless special reason exists requiring the collection of the judgment." Accordingly, we see no reason why the probate court cannot require such set off under OCGA § 53-7-54 (c).

Moreover, there appears to be some authority by which the probate court could have entered judgment and thereafter levied Scott Knapp's share of the estate. See

_____

And this is essentially what the probate court did.

10

OCGA § 53-7-23.[7] In fact, Scott Knapp conceded as much below, asserting that "[s]ince there is no surety in this matter, Mr. Knapp's share of the estate may be reached for levy purposes."

Turning to the terms of the order, we find that despite the apparent intent of the probate court to set off the damages award against Scott Knapp's share of the remaining estates, the order does not make the findings necessary to do so. The probate court found that Nancy Knapp and the Grandchildren suffered certain "actual damages in amounts not less than" $92,540.58, in the aggregate, but that other damages remained indeterminate or contemplated yet unawarded, including punitive damages.[8] The Grandchildren suggest that given the diminution in the original value

---

[7] OCGA § 53-7-23 provides:

In all cases of judgments recovered against a personal representative and the sureties of the personal representative, the execution shall first be levied on the property of the sureties, and no levy shall be made on the property of the principal until there is a return of nulla bona as to the sureties.

[8] The probate court found that Scott Knapp's actions "would support" an award of punitive damages "in a substantial amount," but did not make such an award. Accordingly, we find no basis for Scott Knapp's claim that the probate court erred in awarding punitive damages "outside the bounds allowed by law." We note, however, that the probate court is authorized to enter an award for punitive damages on remand for breach of fiduciary duty. See *In re Estate of Zeigler*, 295 Ga. App. at 159-160.

11

of the estates they suffered damages far in excess of the value Scott Knapp's remaining one-third share.[9] However, as to the diminution in value, the probate court only found that Nancy Knapp and the Grandchildren were damaged by the decline in value of real property in the estates, but that such was "in an amount as yet not determined."[10]

Moreover, it does not appear that the probate court determined the value of Scott Knapp's remaining share from the estates for purposes of any set off. The $92,540.58 in actual damages found by the probate court is not necessarily greater than or equal to the value of Scott Knapp's remaining distribution. And neither Nancy Knapp or the Grandchildren show that the value of Scott Knapp's remaining distribution is less than $92,540.58. Although we are sympathetic to the probate court's attempts to conclude this long-running litigation and recognize the patience exercised in the years leading up to the final order, we do not believe that OCGA §

---

[9] The Grandchildren apparently base their computations on the probate court's finding that, as valued on the estate tax return filed for George Knapp's estate, the distributive shares "would have been" $530,145.

[10] The probate court also included attorney fees and expenses in its damages calculation, and those amounts included additional, yet also undetermined, fees for the hearing.

53-7-54 permits the probate court to disallow Scott Knapp from taking his share of the estates in the absence of a specific finding of the amount of damages suffered from the breach of fiduciary duty and a further finding that the damages award is equal to or exceeds his share under the terms of the wills.[11]

Accordingly, the probate court's order is vacated and the case remanded for proceedings not inconsistent with this opinion. See, e.g., *In re Estate of Price*, 324 Ga. App. 681 (751 SE2d 487) (2013) (vacating the judgment and remanding the case to the probate court where that court failed to make findings necessary to support its ruling).

*Judgment vacated and case remanded. Andrews, P. J., and Dillard, J., concur.*

---

[11] We note that the probate court found that Nancy Knapp and the Grandchildren "cannot be made whole even to the extent that their respective shares as estimated by the estate tax return, much less reimbursed for their losses in attorneys' fees and expenses," from the funds and property remaining in the estates. But the probate court also found that "[t]here presently remains in the Estates . . . cash and investments of $456,573.90 and the two parcels of real property having a probable combined value of not more than $180,000." Thus, it does appear that there remains sufficient property in the estates to satisfy the $92,540.58 awarded by the probate court, if one assumes that Scott Knapp would be entitled to a one-third share under the terms of the wills.