**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0627. IN RE: ESTATE OF HAZEL WILLIAMS HELMS.

RAY, Judge.

Jan Helms Rowell, beneficiary under the will of her late mother, Hazel Williams Helms ("the decedent"), appeals the probate court's order settling the decedent's estate. She also appeals from the probate court's denial of her motion to make or amend findings of fact and conclusions of law and her motion for new trial. For the reasons that follow, we vacate in part, affirm in part, and remand the case with direction.

The relevant facts are as follows. The decedent died testate on November 4, 2007. A copy of the will, dated May 25, 1999, is not in the appellate record. However, the record shows that the four beneficiaries under the will are: Jan Helms Rowell, Charles Helms, III ("Helms"), Bryan Helms, and Hollis Helms Erikson. Under the

terms of the will, Rowell was to receive 50 percent of the residue, Charles Helms, III was to receive 25 percent of the residue and Bryan Helms and Hollis Helms Erikson were each to receive 12 ½ percent of the residue. During the period between November 2007 through July 2011, the estate remained unrepresented while Rowell and Helms litigated the issue of who should serve as personal representative. In July 2011, both Rowell and Helms renounced their rights to serve as executor, and the probate court appointed Ann J. Herrera to serve as administrator with will annexed (the "Administrator").

The Administrator filed a petition in the probate court for Final Settlement of Accounts and Approval of Distribution Plan (the "Plan") pursuant to OCGA § 53-7-62.[1] In addition to a distribution of the estate's assets, a part of the Plan set forth in the petition consisted of a resolution of disputes and claims against Rowell. Helms, Bryan Helms and Hollis Helms Erikson each consented to the Administrator's

_____

[1] OCGA § 53-7-62 (a) states, in relevant part, that "[a]ny person interested as an heir or beneficiary of an estate or the probate court may, after the expiration of six months from the granting of letters, cite the personal representative to appear before the probate court for a settlement of accounts. Alternatively, . . . the personal representative may cite all the heirs or beneficiaries . . . to be present at the settlement of the personal representative's accounts by the court. The settlement shall be conclusive upon the personal representative and upon all the heirs or beneficiaries[.]"

2

petition, but Rowell did not. Rowell responded to the Administrator's petition with an alternative proposal.

A hearing was held before the probate court. See OCGA § 53-7-63 (the probate court is authorized to hear evidence on disputed issues and "make a final settlement between the personal representative and the heirs or beneficiaries"). In its order adopting the Administrator's proposed Plan, the probate court noted that Rowell's 50 percent share of the estate's remaining assets (after administrative expenses) totaled $364,934.46. However, the Plan also reduced the assets to be received by Rowell "based on [her] previous actions regarding estate assets and the cost to the estate." By adopting the Plan, the probate court authorized the Administrator to distribute to Rowell, inter alia, the estate's 50 percent interest in a duplex home, which interest the Administrator valued at $185,755, all furniture located in the duplex valued at $15,995, title to two vehicles valued at $1,500 and stock valued at $100,000. The amount of distribution to Rowell corresponded to an approximately $61,684 reduction in her in 50 percent testamentary share.

1. Rowell challenges the probate court's factual findings concerning the amount by which her 50 percent testamentary share was reduced. She claims that the

probate court erred by adopting the Plan without evidence to support the $61,684 reduction in her testamentary share. We agree.

> On appellate review, we will not set aside the probate court's factual findings unless they are clearly erroneous, deferring to the court's opportunity to judge the credibility of the witnesses. The clearly erroneous test is the same as the "any evidence" rule. Thus, where the probate court's findings of fact are supported by any evidence, they will be upheld on appeal.

(Footnotes omitted.) *In re Estate of Long*, 307 Ga. App. 896, 898 (2) (706 SE2d 704) (2011).

Consistent with the testimony adduced at the hearing, the probate court found that during the four years between her mother's death and the probate court's appointment of the Administrator, "Rowell acted as a fiduciary without court appointment [and] collected assets belonging to [d]ecedent . . . prior to [d]ecedent's death." More specifically, the probate court found that Rowell "received approximately $125,000.00 from the sale of an easement belonging to [d]ecedent; collected $14,500.00 in rental receipts from the [d]uplex; and received dividends from the Coca-Cola Stock" and placed these funds in accounts over which she maintained exclusive possession and control. It further found that Rowell "had used

4

estate funds to pay expenses related to non-probate assets as well as her own personal and family expenses.. . . [and] did not pay taxes, leaving the estate responsible for payment of overdue taxes plus penalties and interest." The Administrator testified that, following the Administrator's appointment, Rowell transferred only $1,540 to the estate.

The Administrator further testified that Helms had provided her with documentation, with "backup and the checks," of $26,400 estate funds that were spent by Rowell on non-estate or partially non-estate expenses.[2] The Adminsitrator elected, however, not to pursue a forensic accounting to determine what Rowell had done with the estate funds. Apart from the $26,400, there was a lack of testimony as to Rowell's use of estate funds or as to the cost to estate of Rowell's acts or omissions. Nor did the probate court make any finding, apart from the expenditure of the $26,400, as to the cost to the estate of Rowell's actions.

---

[2] Consistent with the Administrator's testimony, the probate court found that the evidence of Rowell's expenditures of estate funds on non-probate assets "included $7,400.00 for Rabun County Property; $1,500.00 in personal expenses; $10,000.00 for the Rockdale County Enterprises, LP and $7,500.00 in expenses related to the Duplex." For purposes of this appeal, Rowell does not challenge the competency of the Administrator to testify as to Rowell's expenditure of the $26,400.

At the commencement of the hearing, Rowell's counsel argued that at issue was $172,000 in funds which had been deposited into a joint checking account. Counsel argued that Rowell had paid estate expenses out of that account, and that, acting as an executor "de facto," Rowell had acted appropriately with respect to the funds. Counsel then proposed that Rowell pay for an accounting and represented that "we welcome an audit." However, Rowell did not present any evidence at the hearing as to how she spent the estate funds that had been in her possession.

In her petition, the Administrator claimed that the Plan was fair and reasonable and in accordance with the intent and provisions of the decedent's will.[3] See *In re Estate of Nesbit*, 299 Ga. App. 496, 499-500 (1) (682 SE2d 641) (2009) (probate court was authorized to make a final settlement between personal representative and the beneficiaries and it did so, "concluding based on the evidence presented that the proposed distribution plan was fair and reasonable"). It is undisputed, however, that the decedent intended for Rowell to receive half of the estate and that the Administrator proposes to distribute less than half of the value of the remainder to Rowell. Thus, absent something more, the intentional distribution of less than half of

[3] Rowell acknowledged the Administrator's power to settle the estate, but objected to the fairness and reasonableness of the distribution under the Plan.

6

the estate's value to Rowell cannot be consistent with the decedent's intent and the duty of the personal representative "to act in the best interests of all persons who are interested in the estate and with due regard for their respective rights." OCGA § 53-7-1 (a). Compare *Harp v. Pryor*, 276 Ga. 478, 479 (578 SE2d 424) (2003) (noting that "[i]n most cases, distributions in kind from different classes of property that result in equal beneficiaries receiving equal value would not show a violation of the executor's duty").

The Administrator did not identify, either below or on appeal, how she arrived at the amount of the specific reduction in Rowell's share contemplated by the Plan. Rather, she argues that there was no legal requirement that she "present the specific dollar-by-dollar calculation for the reduction made to [Rowell's] share," and that the reduction was consistent with the exercise of her discretion to make adjustments to the share of a beneficiary. It is undisputed that the decedent's will incorporated the provisions of former OCGA § 53-12-232. Thereunder, the Administrator is authorized "[t]o compromise, adjust, arbitrate, bring or defend actions on, abandon, or otherwise deal with and settle claims in favor of or against the estate or trust as the

fiduciary shall deem advisable[.]" OCGA § 53-12-232 (23) (1999).[4] Although it appears that the decedent had vested the Administrator with discretion in pursuing claims on behalf of estate, it does not follow that the Administrator could arbitrarily choose an amount by which the value of Rowell's distributive share should be adjusted based upon a possible claim against Rowell by the estate or other beneficiaries.

The probate court also found, however, that the Administrator proposed to reduce the amount distributed to Rowell based on Rowell's previous actions regarding estate assets and the cost to the estate. In the context of an action under OCGA § 53-7-62, the probate court may "hear evidence upon any contested question." OCGA § 53-7-63. Thus, to the extent that the evidence showed that Rowell had converted estate funds or expended estate funds on non-estate assets, such that those monies were no longer available for distribution, or had otherwise damaged the estate, the probate could would have had a basis for reducing the value of Rowell's

---

[4] Chapter 12 of Title 53 of the Official Code of Georgia Annotated was repealed in 2010 and a new Chapter 12 was enacted. See Ga. L. 2010, p. 579. Under current OCGA § 53-12-263 (d) (1), "[a] provision in any will or trust instrument which incorporates powers by citation to . . . former Code Section . . . 53-12-232 . . . which were in effect at the time the trust was created and which was valid under the law in existence at the time the will was signed by the testator . . . shall be effective notwithstanding the subsequent repeal of such statute."

distributive share. See, e. g., *Fowler v. Cox*, 264 Ga. App. 880, 887 (1) (a) (vi) (592 SE2d 510) (2003) (probate court's reduction of net estate distributed to executrix "did no more than correct for breaches of fiduciary duty"). However, the Administrator presented no evidence which showed that Rowell's actions had cost or otherwise damaged the estate in the amount of $61,684. The Administrator suggests that inasmuch as Rowell came into possession of estate funds and "paid Estate bills at her own discretion with no oversight," it was Rowell's burden to show that she had acted appropriately with estate funds. However, the Administrator elected not to file any legal action for an accounting against Rowell,[5] nor did the probate court order Rowell to make an accounting. See OCGA § 24-14-1 (2012)[6] ("The burden of proof generally lies upon the party who is asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential"); *Peterson v. Willbanks*, 157 Ga. 382, 387 (121 SE 326) (1924) (as the action was not for an accounting, the burden of

---

[5] Nor does it appear that Helms and the other beneficiaries, who consented to the Plan, pursued any separate claim against Rowell for damages. See OCGA § 53-6-2 (providing that a person who intermeddles with or converts property of a decedent whose estate is unrepresented is liable to beneficiaries for double the value of the property so possessed or converted).

[6] The hearing before the probate court was held in October 2012, before the January 1, 2013, effective date of the new evidence code.

9

showing the fact at issue was on parties asserting it). Thus, we agree with Rowell that the probate court erred in authorizing the reduction in the value of her distributive share by $61,684, and we vacate the probate court's order in part and remand the case for a determination of the appropriate amount, if any, of such reduction. See *In re Estate of Knapp*, 326 Ga. App. 486, 492 (756 SE2d 716) (2014) (vacating probate court's order and remanding the case where the probate court failed to make findings sufficient to disallow appellant from taking his share of the estates); *In re Estate of Long*, supra, at 901 (3) (remanding case for the probate court to determine whether, and in what amount, beneficiaries owed money to the estate).

2. Rowell also asserts that the probate court erred in accepting the Administrator's valuation of the duplex property. We disagree.

The Plan contemplated that Rowell receive the estate's one-half interest in the duplex property. The Plan valued that interest at $185,755, which is approximately half of the duplex's insurance replacement value of $371,511. In its order, the trial court found that the Administrator based her valuation on the insurance replacement value and accepted the Plan's valuation. Rowell presented the testimony of a residential appraiser who opined that the value of the duplex was $235,000, and that, taking into account the limited marketability of a half-interest in the property, the

10

value of the estate's interest in the duplex was $100,000.[7] In its order, the probate court found Rowell's expert witness to be not credible because he valued the one-half interest without knowledge that Rowell and Helms were co-trustees of a trust that was the other 50 percent owner of the duplex and because the comparable sales utilized by the appraiser were "almost non-existent."

Rowell argues that the trial court erred because the Plan's valuation was inconsistent with the Administrator's testimony that she had intended to value the duplex between the tax values and the insurance replacement cost. She further contends that the Administrator's opinion of value was speculative and an insufficient basis for the trial court's approval of the Plan.

Pertinent to this dispute, under former OCGA § 53-12-232 (27) (1999) the fiduciary is authorized:

> To make distribution of capital assets of the estate or trust in kind or in cash, or partially in kind and partially in cash, in divided or undivided interests, as the fiduciary finds to be most practicable and for the best interests of the distributees, and the fiduciary may distribute types of assets differently among the distributees; and to determine the value of

_____

[7] A lower valuation of the real estate would have benefitted Rowell because, as the Administrator acknowledged, Rowell would have then received additional cash or stock.

11

capital assets for the purpose of making distribution thereof if and when there are more than one distributee thereof, which determination shall be binding upon the distributees unless clearly capricious, erroneous, and inequitable.

Further, "[t]he courts will not ordinarily interpose to restrain the execution of a power, except where abuse of discretion, bad faith, or fraud is shown, or where the power is attempted to be exercised in a manner different from that authorized by the donor." (Citation and punctuation omitted.) *Cates v. Cates*, 217 Ga. 626, 632 (3) (124 SE2d 375) (1962).

The Administrator testified at some length about her valuation of the duplex. Her direct testimony showed that she considered the tax valuation of the duplex as demonstrating that the value of the property had decreased over time following the death of the decedent, and that she considered it "disingenuous" for Rowell to have controlled the property during that time and then have asked for "it at its lowest value." Although she also indicated on cross-examination that she had intended to value the property "somewhere" between the insurance replacement value and the tax value, we are unpersuaded that the probate court was required thereby to reject the valuation assigned to the property under the Plan. Rather, the evidence showed that the value assigned to the Estate's interest in the duplex corresponded to half of the

12

insurance replacement value of the property, and Rowell's questioning of her own expert indicated that replacement cost was a possible approach for the valuation of property. Accordingly, we conclude that the probate court was not required to find the Administrator's determination of value to be capricious, erroneous, and inequitable, and it did not err in accepting the Administrator's valuation. See *Cates*, supra at 633-634 (3) (finding that executors were not shown to have acted capriciously, in bad faith, or fraudulently in relying on a third party to value real estate for purposes of distribution).

3. Rowell further claims that the probate court erred in refusing to hear testimony from Rowell regarding her accounting of estate assets, in denying her post-judgment motion to amend its findings of fact and conclusions of law, and in denying her motion for new trial. In light of our findings in Divisions 1 and 2, supra, these claims of error are moot.

*Judgment affirmed in part, vacated in part, and case remanded with direction. Andrews, P. J., and McFadden, J., concur.*