A06A1175. FREEMAN v. COVINGTON et al.
(637 SE2d 815)

BERNES, Judge.
This appeal culminates several years of litigation between feuding siblings over the distribution and management of their deceased mother's estate. The appellant is challenging the probate court's

---

construction of a settlement agreement that the court determined barred the appellant's subsequent claim for reimbursement from the estate assets. Because we conclude that the settlement agreement is itself unenforceable for its failure to comport with the provisions of OCGA § 53-5-25, we vacate the probate court's order and remand this case to that court for further proceedings in accordance with this opinion.

The facts set forth in the record are as follows. The decedent Carrie Ann Covington died in March 2003. She left eight children, including appellees Hugh E. Covington, Hazel Thayes, Martha Caldwell ("Hugh Covington's Faction"), appellant Dora Ann Freeman, Sandra DeFoor, Jimmy Covington[1] ("Freeman's Faction"), Doyle Covington, and Betty Jean King, who is mentally disabled.

Ms. Covington had purportedly executed two wills before her death. The first will, executed in March 1992, named Ms. King as the beneficiary of all of Ms. Covington's assets, to be held in trust for her benefit by Hugh Covington as executor and trustee. Freeman was named as an alternate executrix and trustee. Upon the death of Ms. King, all remaining assets were to be sold and the proceeds distributed equally among her other children.

Under the terms of the second will, executed in February 1996, Ms. Covington's assets were bequeathed to Ms. King in fee simple, with the exception of $175, which was to be divided equally among her other seven children, leaving to them $25 each. The 1996 will provided that Ms. Covington's assets were not to be sold until after Ms. King had passed away and that Ms. King was to live in a trailer on estate property, which was not to be sold without Ms. King's express permission. In the event that Ms. Covington's assets had to be sold, all proceeds up to $200,000 were to go to Ms. King and any remaining proceeds were to be split among the other living children. If Ms. King predeceased Ms. Covington, all assets were to be given to Freeman in fee simple. Finally, the 1996 will named Freeman and DeFoor as co-executrixes of the will, and named Jimmy Covington as an alternate executor.

After Ms. Covington died, Hugh Covington petitioned to probate the 1992 will in the Probate Court of Cobb County.[2] Freeman's

---

[1] Jimmy Covington apparently passed away sometime after these proceedings began.

[2] Hugh Covington challenged the validity of the 1996 will, asserting that Ms. Covington suffered from dementia and Alzheimer's disease and lacked the capacity to execute the same. He and the other appellees had apparently filed several civil suits against Freeman's Faction alleging that Freeman had unduly obtained a power of attorney from their mother and unlawfully executed a deed under that power of attorney transferring certain property to herself, DeFoor and Jimmy Covington before their mother's death. The only civil suit still in existence at the time of the settlement was pending in the Forsyth County Superior Court, and

Faction filed a caveat and objections to the petition. The caveat also identified Ms. King as a caveator. The case was subsequently transferred to the Probate Court of Forsyth County based on a jurisdictional issue raised in the caveat.

The Probate Court of Forsyth County ordered the parties to mediation, and after the mediation proved unsuccessful, scheduled a bench trial for May 4, 2005. On the day of the scheduled trial, the attorneys for both Factions represented to the court that a settlement had been reached. The court was presented with a written agreement between Hugh Covington, Caldwell, Thayes, Freeman, Jimmy Covington, and DeFoor (the "Named Parties") that purported to settle all of the disputes among them related to the estate of Ms. Covington. It provided that all of the estate assets would be sold and the proceeds placed in escrow. The money would first be used to pay all taxes associated with the sale of the estate and the creation of a trust, all court costs of any pending actions, and the attorney fees of the Freeman Faction. The remaining proceeds were to be placed into a trust for the benefit of Ms. King, with Freeman and Hugh Covington acting as co-trustees. The agreement also contained a broad release from all claims between the Named Parties, including future claims that "are currently known, unknown, foreseen, or unforeseen."

The probate court conducted a hearing the same day and approved the settlement. The record does not reflect that either Ms. King or Doyle Covington were present during the settlement negotiations or the hearing.

On May 26, 2005, counsel for the Named Parties submitted to the probate court a consent order notifying the court that Freeman was seeking reimbursement for expenditures that she had allegedly incurred while preparing certain assets of the estate for sale. The consent order indicated that the Named Parties could not agree on a reimbursement amount and requested that the court conduct a hearing to determine the same. The order was signed by the probate judge and a hearing was conducted on June 16, 2005. The probate court entered its final order on July 11, 2005, in which it held that Freeman's claim for reimbursement had been waived by the release contained within the settlement agreement.

The appellant challenges the probate court's final order and primarily focuses on Freeman's entitlement to the disputed reimbursement. We find more significant a contention raised only briefly by appellant: whether the settlement agreement and probate court's order must be set aside pursuant to OCGA § 53-5-25, because neither

the settlement agreement purported to encompass both that lawsuit and the instant dispute in the probate court.

Doyle Covington nor Ms. King were parties to the settlement agreement and further because no inquiry was made into whether Ms. King's interests should be represented by a guardian.

Parties who are engaged in a contest over the validity of a will can enter into a settlement agreement that disposes of estate property contrary to the terms of the will and seek approval from the probate court. OCGA § 53-5-25 (a). Before approval can be granted, a hearing must be held at which the court hears evidence and determines that a bona fide contest or controversy exists. Id. The law requires, however, that any proposed agreement be assented to in writing by all of the testator's heirs and all of the beneficiaries affected by the settlement.[3] Id. at (b), (c). In the event that one of the heirs or affected beneficiaries is not sui juris, an independent guardian ad litem must be appointed to represent that individual. Id. at (c); OCGA § 53-11-2 (b). The guardian is under a duty to investigate the proposed settlement and report both its findings and recommendations to the court, and the court must consider its recommendations but is not bound by them. OCGA § 53-5-25 (c).

Ms. King is both an heir of Ms. Covington and the primary beneficiary under her will. While she was a named party to the original caveat and purportedly represented by the attorney for Freeman's Faction, she was not a named party to the settlement agreement and, on appeal, the attorney for Freeman's Faction denies that she was represented during the negotiations or execution of that agreement. Moreover, the record indicates that Ms. King is mentally disabled and possibly incapacitated, yet there is no evidence that any inquiry was made into whether she required the appointment of an independent guardian to represent her interests or that her interests were assessed and reported to the probate court by any party purporting to be acting on her behalf.[4]

Furthermore, the record is devoid of any evidence showing Doyle Covington's assent to or participation in the settlement agreement. Under these circumstances, we conclude that the settlement agreement is unenforceable, and, therefore, that the probate court erred in

---

[3] Assent by all of the affected persons is required irrespective of whether the parties to the settlement agreement seek approval from the court pursuant to OCGA § 53-5-25. *Leone Hall Price Foundation v. Baker*, 276 Ga. 318, 320 (3) (577 SE2d 779) (2003).

[4] In the caveat, Freeman is alleged to be the "attorney in fact" for Ms. King, but she has apparently abandoned that claim on appeal. In any event, see OCGA § 53-11-2 (a) and the corresponding Comment, which recognizes that the interests of the guardian and the party represented may be in conflict when the guardian is also a personal representative of the decedent, an heir, or a beneficiary under the will of the decedent.

approving and entering judgment on the settlement agreement. See *Leone Hall Price Foundation v. Baker*, 276 Ga. 318, 319-320 (2) (577 SE2d 779) (2003).

We vacate the probate court's order and remand this case to the probate court in order for the court to assess the need to appoint an independent guardian for Ms. King and to ensure that her interests are adequately protected in any future negotiations or proceedings. We note that Doyle Covington or someone on his behalf must also assent to any future agreement.

*Judgment vacated and case remanded with direction. Andrews, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 25, 2006.

*Clarence L. Leathers, Jr.*, for appellant.
*Blackford & Blackford, Peter M. Blackford*, for appellees.