A09A0650. IN RE ESTATE OF NESBIT.
(682 SE2d 641)

PHIPPS, Judge.

Dale Nesbit ("Nesbit") appeals the probate court's order approving a plan for distributing the estate of her mother, Harriet Grey Nesbit, who died testate in 1999. For reasons that follow, we affirm.

The record does not contain a copy of the will. Without dispute, however, it required equal distribution of the estate — consisting primarily of the decedent's home and surrounding land totaling approximately five and one half acres in Roswell — among Nesbit and her five siblings. As found by the probate court, the will also authorized the estate's administrator to "make any division or distribution required hereunder in cash, or in other property, or partly in cash and partly in property."

The probate proceedings have been contentious, with the various heirs fighting over the proper division of their mother's property. In particular, Nesbit, who lives in her mother's home, seeks owner-

ship of the house, while her siblings wish to sell the entire tract. The disagreements have spawned collateral litigation, including an action that resulted in a court order requiring Nesbit to pay the estate rent of $1,000 per month to remain in the house.

In 2004, the probate court appointed attorney Ann J. Herrera as the estate's administrator. Herrera attempted to secure a buyer for the Roswell property in 2005, but the transaction failed to close. Unhappy with Herrera's efforts, one of Nesbit's brothers petitioned the probate court to revoke Herrera's letters of administration. Rather than immediately ruling on the petition, the probate court ordered the brother and Herrera to participate in a judicially hosted settlement conference.

At that point, Nesbit moved to intervene in the petition to remove Herrera. The probate court denied the motion, and the settlement conference proceeded without Nesbit. During the conference, the brother dropped his removal effort in favor of resolving the estate issues. Negotiating on behalf of all siblings except Nesbit, the brother agreed with Herrera on an estate distribution plan.

The proposed plan assumed a gross market value of $800,000 for the Roswell property. It itemized a total of $155,779.80 in estate expenses, including a ten percent real estate commission in the amount of $80,000 and additional administrator compensation of $50,000. After subtracting the expenses from the market value of the property, the plan calculated the estate's net value at $644,220.20, resulting in six distributive shares of $107,370.03. From Nesbit's share, the plan deducted $14,000 for unpaid rent and $2,000 for 2007 taxes paid by one of her siblings. Nesbit's final share, therefore, was valued at $91,370.03.

The plan further provided that the property would be transferred to Nesbit's siblings, who would pay the estate $141,370.03, which represented Nesbit's share ($91,370.03) plus the $50,000 in administrator compensation. Once Nesbit vacated the property, she would receive $91,370.03. Ultimately, therefore, the plan sought to settle the estate through a cash payment to Nesbit and a transfer of property to the other siblings.

Herrera petitioned the probate court to approve the proposed distribution plan. Nesbit objected, asserting that she had been excluded from the distribution plan negotiations and that the plan unfairly favored her siblings. Following a hearing at which both Nesbit and her brother testified, the probate court approved the plan over Nesbit's objections.

1. Nesbit argues that because she never agreed to the distribution plan, the probate court erred in approving it. Citing OCGA § 53-5-25, Nesbit claims that a probate court cannot approve an estate settlement absent agreement by all of the heirs and

beneficiaries.[1] By its plain terms, however, OCGA § 53-5-25 applies only when a settlement disposes of estate property "contrary to the terms of the will."[2] And in this case, the probate court determined that the plan did not vary the will.

We find no error. The will provided for equal distribution between Nesbit and her five siblings, and the distribution plan carried forth this requirement. Although the plan anticipated a property distribution for five of the heirs and a cash distribution for Nesbit, the will authorized the administrator to make distributions in either form. As found by our Supreme Court, "[i]n most cases, distributions in kind from different classes of property that result in equal beneficiaries receiving equal value" are acceptable.[3]

Seeking to avoid this general rule, Nesbit argues that the plan's mixed distribution would result in unequal treatment for her. She claims, for example, that the plan undervalued the Roswell property, which in her view is worth well over $800,000. According to Nesbit, a cash payment to her based on that $800,000 valuation would place her on an unequal footing with her siblings, who would receive title to the property.

The record shows, however, that the $800,000 valuation resulted from a recent purchase offer from a disinterested buyer. We recognize that the estate received at least one higher offer at some point during the lengthy probate proceedings. But lower appraisals also were given, and Nesbit offered to purchase the property at one point for $420,000. Given the conflicting evidence regarding the property's value, the probate court did not err in accepting the $800,000 figure.[4]

Nesbit also complains that she never agreed to pay the administrator $50,000 in extra compensation and that the will did not contemplate such a payment. Nesbit, however, cannot show that the payment varies the terms of the will, which is not in the record.[5] Moreover, an administrator may petition the probate court for additional compensation above that specified in a will or otherwise allowed by law.[6] After hearing any objections, the probate court "shall allow such extra compensation as the court deems reasonable."[7]

---

[1] See OCGA § 53-5-25 (b); *Freeman v. Covington*, 282 Ga. App. 113, 116 (637 SE2d 815) (2006).

[2] OCGA § 53-5-25 (a).

[3] *Harp v. Pryor*, 276 Ga. 478, 479 (578 SE2d 424) (2003).

[4] See *Fowler v. Cox*, 264 Ga. App. 880, 882 (592 SE2d 510) (2003) (an appellate court will not disturb the lower court's factual findings if any evidence supports them).

[5] See *Bailey v. City of Atlanta*, 296 Ga. App. 679, 683 (2) (675 SE2d 564) (2009) (appellant bears the burden of showing error by the record).

[6] OCGA § 53-6-62 (a).

[7] OCGA § 53-6-62 (b).

Five of the six heirs agreed that Herrera should receive $50,000 in additional compensation, and Herrera included this amount in her petition for court approval of the distribution plan. The petition — including the provision for additional compensation — was served on Nesbit, who raised objections. The probate court received evidence on those objections, considered Herrera's testimony that she spent extensive time on the estate over several years of contentious litigation, and found the extra compensation reasonable. Nesbit has not demonstrated that the court abused its discretion in this regard.[8]

Finally, Nesbit challenges the $80,000 deduction for a real estate commission on the Roswell property. Asserting that the distribution plan anticipates a property transfer without the services of a real estate agent, Nesbit argues that her siblings included this alleged expense as a ruse to lower her share and undermine the equal distribution required by the will. The probate court, however, rejected Nesbit's claim that the siblings manipulated the plan to reduce her share. And her brother testified that the siblings intend to sell the land after purchasing Nesbit's interest. He further explained that, given the contract requirements of the most recent purchase offer, the siblings expect to pay a ten percent commission in connection with any sale.

The probate court determined that various activities by Nesbit during the probate proceedings — including filing collateral lawsuits, petitioning for injunctive relief, and objecting to re-zoning applications by potential commercial buyers — hindered the estate's ability to sell the property. It further found that "a conveyance of real property which would result in the heirs being 1/6 owners of the tract of land [would not be] in the best interest of the estate." Accordingly, it sought to value the estate for distribution in another manner. And in making this calculation, the court concluded that the value of the estate should be reduced by $80,000 to account for the real estate commission that would be paid upon sale. In essence, it found that although the property might have a market value of $800,000, it was actually worth only $720,000 to the heirs because of the real estate commission. At least some evidence supported this conclusion.

The probate court properly found that the distribution plan did not alter the terms of the will. Nesbit's consent, therefore, was not necessary under OCGA § 53-5-25. Moreover, the probate court was authorized to hear evidence on disputed issues and "make a final

---

[8] See *Nesmith v. Pierce*, 226 Ga. App. 851, 853 (2) (487 SE2d 687) (1997) (whether to award extra compensation to an estate administrator falls peculiarly within the probate court's jurisdiction and discretion).

settlement between the personal representative and the heirs or beneficiaries."[9] It did so here, concluding based on the evidence presented that the proposed distribution plan was fair and reasonable. Undoubtedly, Nesbit sought a different method of distribution, such as a division of the actual land between the siblings. But the probate court found such division impractical, and some evidence showed that partitioning the property would leave Nesbit's siblings with unmarketable portions of the tract. The probate court, therefore, did not err in approving the distribution plan.

2. Nesbit also claims that the probate court erred in refusing to allow her to intervene in her brother's effort to remove Herrera. Noting that the removal action produced the distribution plan, she argues that she was an interested party who had a right to intervene.[10]

The record shows, however, that Nesbit's interests in the matter were protected. She was served with a copy of the petition seeking approval of the distribution plan, filed objections, appeared at the hearing, questioned witnesses, and testified herself. The probate court was well aware of her concerns regarding the estate, and it considered her position before approving the plan. Under these circumstances, Nesbit has not shown that she was harmed by the court's ruling on her motion to intervene.[11]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED JULY 9, 2009 —
RECONSIDERATION DENIED JULY 31, 2009.

*Robert W. Hughes, Jr.*, for appellant.

*Russell & Herrera, Ann J. Herrera, Dana C. Ashford*, for appellee.

---

[9] OCGA § 53-7-63.

[10] See OCGA § 9-11-24 (a) (2) (person has the right to intervene in an action if she claims an interest in the property or transaction at issue and "is so situated that the disposition of the action may as a practical matter impair or impede [her] ability to protect that interest").

[11] See *O'Neal v. Oxendine*, 237 Ga. App. 171, 177 (3) (514 SE2d 908) (1999) (no reversible error in denial of motion to intervene where appellant was not prevented from participating in hearing and failed to show harm).